ANDREW L. PACKARD (State Bar No. 168690)
WILLIAM N. CARLON (State Bar No. 305739)
LAW OFFICES OF ANDREW L. PACKARD
245 Kentucky Street, Suite B3
Petaluma, CA 94952
Tel: (707) 782-4060
Fax: (707) 782-4061
andrew@packardlawoffices.com
wncarlon@packardlawoffices.com

Attorneys for Plaintiff
CALIFORNIA SPORTFISHING
PROTECTION ALLIANCE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE,<br><br>    Plaintiff,<br>  v.<br><br>DenBeste Yard & Garden, Inc.,<br><br>    Defendant. | Case No. 4:22-cv-01975-DMR<br><br>**AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES**<br><br>**(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251-1387)** |

CALIFORNIA SPORTFISHING PROTECTION ALLIANCE ("CSPA"), by and through its counsel, hereby alleges:

**I.    JURISDICTION AND VENUE**

1.    This is a civil suit brought under the citizen suit enforcement provision of the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251–1387 (the "Clean Water Act," "CWA" or "Act") against DenBeste Yard & Garden, Inc. ("Defendant"). This Court has subject matter jurisdiction over the parties and the subject matter of this action pursuant to Section 505(a)(1) of the Act, 33 U.S.C. § 1365(a), and 28 U.S.C. § 1331 (an action arising under the laws of the United States). Specifically, this action arises under Section 505(a)(1)(A) of the Act, 33 U.S.C. § 1365(a)(1)(A) (citizen suit to enforce effluent standard or limitation). The relief requested is

1    authorized pursuant to 33 U.S.C. §1365(a) (injunctive relief), 1319(d) (civil penalties), and 28
2    U.S.C. §§ 2201–2202 (power to issue declaratory relief in case of actual controversy and further
3    necessary relief based on such a declaration).

4      2. On January 26, 2022, Plaintiff provided written notice to Defendant, via certified
5    mail, of Defendant's violation of the Act ("Notice Letter"), and of Plaintiff's intention to file suit
6    against Defendant, as required by the Act. *See* 33 U.S.C. § 1365(b)(1)(A); 40 C.F.R.
7    § 135.2(a)(1). Plaintiff mailed a copy of the Notice Letter to the Administrator of the United
8    States Environmental Protection Agency ("EPA"); the Administrator of EPA Region IX; the
9    Executive Director of the State Water Resources Control Board ("State Board"); and the
10   Executive Officer of the Regional Water Quality Control Board, San Francisco Bay Region
11   ("Regional Board"), pursuant to 40 C.F.R. § 135.2(a)(1). A true and correct copy of the Notice
12   Letter is attached hereto as **Exhibit A** and is incorporated by reference.

13     3. More than sixty days have passed since Plaintiff served the Notice Letter on
14   Defendant and the agencies. Plaintiff is informed and believes, and thereupon alleges, that
15   neither the EPA nor the State of California has commenced nor is diligently prosecuting a court
16   action to redress the violations alleged in this Complaint. This action's claims for civil penalties
17   are not barred by any prior administrative penalty under Section 309(g) of the Act, 33 U.S.C. §
18   1319(g).

19     4. Venue is proper in the Northern District of California pursuant to Section
20   505(c)(1) of the Act, 33 U.S.C. § 1365(c)(1), because the sources of the violations are located
21   within this District. Venue is also proper under 28 U.S.C. § 1391(b) because a substantial part of
22   the events or omissions giving rise to Plaintiff's claims occurred in this District. Intra-district
23   venue is proper in either San Francisco or Oakland, California, because the sources of the
24   violations are located within Sonoma County.

25   **II. INTRODUCTION**

26     5. This Complaint seeks relief for Defendant's violations of the CWA at
27   Defendant's facility located at 26916 Asti Road, in Cloverdale, California ("Facility").
28   Defendant discharges pollutant-contaminated storm water from the Facility into the Russian

AMENDED COMPLAINT  2  CASE NO. 4:22-CV-01975-DMR

1  River, which discharges to the Pacific Ocean.  The Russian River and the Pacific Ocean (the

2  "Impacted Waters") are waters of the United States within the meaning of the Clean Water Act.

3  Defendant is in violation of both the substantive and procedural requirements of the CWA.

4       6. Defendant's unpermitted discharges of polluted storm water from the Facility

5  violate Section 301(a) of the Act, 33 U.S.C. § 1311(a), which prohibits the discharge of storm

6  water associated with industrial activities to waters of the United States except in compliance

7  with the terms of a National Pollutant Discharge Elimination System ("NPDES") permit issued

8  pursuant to Section 402 of the Act, 33 U.S.C. § 1342.  These violations are ongoing and

9  continuous.

10       7. Defendant's failure to obtain coverage under the State of California's General

11  Industrial Permit for storm water discharges, State Board Water Quality Order No. 91-13-DWQ,

12  *amended by* Nos. 92-12-DWQ, 97-03-DWQ, 14-0057-DWQ, NPDES General Permit No.

13  CAS000001 (hereinafter "General Permit" or "Permit") is a violation of Section 301(a) of the

14  Act.

15       8. The failure on the part of industrial facility operators, such as Defendant, to apply

16  for and comply with the General Permit is recognized as a significant cause of the continuing

17  decline in water quality of receiving waters.  The general consensus among regulatory agencies

18  and water quality specialists is that storm water pollution amounts to more than half the total

19  pollution entering the aquatic environment each year.  With every rainfall event, hundreds of

20  thousands of gallons of polluted storm water originating from industrial facilities discharge to the

21  Impacted Waters.

22  **III.    PARTIES**

23       9. Defendant DenBeste Yard & Garden, Inc. is a California corporation.

24       10. The Agent for Service of Process for Defendant DenBeste Yard & Garden, Inc. is

25  PAUL RAY DENBESTE.

26       11. Defendant DenBeste Yard & Garden, Inc. owns the Facility.

27       12. Defendant DenBeste Yard & Garden, Inc. operates the Facility.

28       13. Plaintiff California Sportfishing Protection Alliance ("CSPA") is a non-profit

public benefit corporation organized under the laws of California, with its main offices in Stockton, California. CSPA is dedicated to the preservation, protection, and defense of the environment, wildlife, and natural resources of California waters, including the waters into which Defendants discharge polluted storm water. To further its goals, CSPA actively seeks federal and state agency implementation of state and federal water quality laws, including the CWA, and directly initiates enforcement actions on behalf of itself and its members as necessary.

14. Members of CSPA—including citizens, taxpayers, property owners, and residents—live, work, travel, and recreate on and near the Impacted Waters, into which Defendant causes pollutants to be discharged. These members of CSPA use and enjoy the Impacted Waters for recreational, educational, scientific, conservation, aesthetic, and spiritual purposes. Defendant's discharges of storm water containing pollutants impairs each of those uses. Thus, the interests of CSPA's members have been, are being, and will continue to be adversely affected by Defendant's failure to comply with the CWA and the General Permit.

15. Members of CSPA reside in California and use and enjoy California's numerous rivers for recreation and other activities. Members of CSPA use and enjoy the Impacted Waters, into which Defendant has caused, are causing, and will continue to cause, pollutants to be discharged. Members of CSPA use these areas to hike, fish, boat, kayak, swim, bird watch, view wildlife, and engage in scientific study, including monitoring activities, among other things. Defendant's discharges of pollutants threaten or impair each of those uses or contribute to such threats and impairments. Thus, the interests of CSPA's members have been, are being, and will continue to be adversely affected by Defendant's ongoing failure to comply with the CWA. The relief sought herein will redress the harms to Plaintiff caused by Defendant's activities because that relief will significantly reduce pollution discharged from Defendant's Facility into the Impacted Waters.

16. Continuing commission of the acts and omissions alleged above will irreparably harm Plaintiff and the citizens of the State of California, for which harm they have no plain, speedy or adequate remedy at law.

**IV.    LEGAL BACKGROUND**

**A.     Clean Water Act**

17.     Congress enacted the CWA to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a).  The CWA establishes an "interim goal of water quality which provides for the protection and propagation of fish, shellfish, and wildlife and provides for recreation in and on the water . . . ." 33 U.S.C. § 1251(a)(2).  To these ends, Congress developed both a water quality-based and a technology-based approach to regulating discharges of pollutants from point sources into waters of the United States.

18.     Section 301(a) of the Act, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant from a point source into waters of the United States, unless such discharge complies with various enumerated sections of the Act.  Among other things, Section 301(a) prohibits discharges not in conformance with a NPDES permit, such as discharges without a NPDES permit or discharges that violate the terms of an NPDES permit issued pursuant to Section 402 of the Act (33 U.S.C. §1342).

19.     The term "discharge of pollutants" means "any addition of any pollutant to navigable waters from any point source." 33 U.S.C. § 1362(12).  Pollutants are defined to include, among other examples, industrial waste, chemical wastes, biological materials, heat, rock, and sand discharged into water.  33 U.S.C. § 1362(6).

20.     A "point source" is defined as "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, [or] conduit . . . from which pollutants are or may be discharged." 33 U.S.C. § 1362(14).

21.     "Navigable waters" means "the waters of the United States." 33 U.S.C. § 1362(7).  Waters of the United States includes, among other things, waters that are, were, or are susceptible to use in interstate commerce and tributaries to such waters.  40 C.F.R. § 230.3 (2015).

22.     Section 402 of the Act, 33 U.S.C. § 1342, establishes the NPDES program—a permitting program that regulates the discharge of pollutants into waters of the United States.  Section 402(p) establishes a framework for regulating municipal and industrial storm water

discharges under the NPDES program, 33 U.S.C. § 1342(p), and, specifically, requires a NPDES permit for storm water discharges associated with industrial activity. 33 U.S.C. § 1342(p)(2)(B). Section 402 authorizes states with approved NPDES permit programs to regulate industrial storm water discharges, through individual permits issued to dischargers and/or through the issuance of a single, statewide general permit applicable to all industrial storm water dischargers. 33 U.S.C. § 1342(b).

23. Section 505(a)(1) provides for citizen enforcement actions against any "person," including individuals, corporations, or partnerships, 33 U.S.C. § 1362(5), for violations of NPDES permit requirements and for unpermitted discharges of pollutants. 33 U.S.C. §1365(a)(1) (authorizing actions against any person alleged to be in violation of an effluent standard or limitation); 33 U.S.C. § 1365(f) (defining "effluent limitation" broadly to include "a permit or condition thereof issued under [Section 402] of this title," and "any unlawful act under subsection (a) of [Section 301] of this title").

24. An action for injunctive relief under the Act is authorized by 33 U.S.C. § 1365(a). Violators of the Act are also subject to an assessment of civil penalties of up to $59,973 per day per violation for all violations occurring after November 2, 2015, pursuant to Sections 309(d) and 505 of the Act. 33 U.S.C. §§ 1319(d), 1365; 40 C.F.R. §§ 19.1–19.4.

**B.   California Industrial Storm Water General Permit**

25. Pursuant to Section 402 of the Act, 33 U.S.C. § 1342, the Administrator of EPA has authorized the State Board to issue NPDES permits in California, including general permits.

26. On November 16, 1990, the EPA promulgated Phase I storm water regulation in compliance with section 402(p) of the Act. 55 Fed. Reg. 47990, codified at 40 C.F.R. § 122.26. These regulations require operators of facilities subject to storm water permitting that discharge storm water associated with industrial activity to obtain an NPDES permit. *Id*.

27. The State Board elected to issue a statewide general permit for industrial discharges. The State Board issued the General Permit on or about November 19, 1991, modified the General Permit on or about September 17, 1992, and reissued the General Permit on April 17, 1997 and again on April 1, 2014 (effective July 1, 2015), pursuant to Section 402(p)

1 of the Clean Water Act, 33 U.S.C. § 1342(p).

2     28.     To discharge storm water associated with industrial activities lawfully in
3 California, industrial dischargers must obtain General Permit coverage and comply with the
4 terms of the General Permit, or obtain and comply with an individual NPDES permit.  33 U.S.C.
5 §§ 1311(a), 1342(p)

6     29.     The industrial activities covered under the General Permit are described in
7 Attachment A to the General Permit.

8     30.     Facilities discharging, or having the potential to discharge, storm water associated
9 with industrial activity that have not obtained an individual NPDES permit must apply for
10 coverage under the State's General Permit by filing a Notice of Intent ("NOI").  The General
11 Permit requires new dischargers to register for NOI coverage at least seven days prior to the
12 commencement of industrial operations.  General Permit, Section II.B.5.  Dischargers with active
13 NOI coverage under Order No. 97-03-DWQ were required to register for NOI coverage under
14 Order No. 2014-0057-DWQ by July 1, 2015.  General Permit, Section II.B.4.b.

15     31.     Dischargers registering for NOI coverage under the General Permit must certify
16 and submit Permit Registration Documents ("PRD") via the Storm Water Multiple Application
17 and Report Tracking System ("SMARTS") website.  General Permit, Section II.B.

18     32.     PRDs consist of a completed NOI and signed certification statement, a copy of a
19 current site map from the Storm Water Pollution Prevention Plan ("SWPPP"), and a SWPPP.
20 General Permit, Section II.B.1.b.

21     33.     Dischargers registering for NOI coverage under the General Permit must also pay
22 the appropriate annual fee in accordance with 23 C.C.R. § 2200 *et seq*.  General Permit, Section
23 II.B.1.c.

24     34.     When PRDs are certified and submitted and the annual fee is received, the State
25 Water Board will assign the discharger a Waste Discharger Identification ("WDID") number.

26     35.     Once regulated by a NPDES permit, facilities must strictly comply with all of the
27 terms and conditions of that permit.  A violation of the General Permit is a violation of the Act.
28 *See* General Permit, Section XXI.A.

## V. STATEMENT OF FACTS

### a. The Facility.

36. Defendant owns and operates the Facility, a yard and garden supply company located in Sonoma County, California.

37. Defendant has operated the Facility for approximately 30 years.

38. Defendant's primary industrial activities at the Facility include mixing potting soil and compost.

39. Defendant sources and mixes materials to create soil amendments. These materials include soil, wood, and compost.

40. Defendant conducts industrial activities and store industrial materials outside in areas exposed to storm water. For example, Defendant stockpiles materials before they are mixed into resaleable products, and stockpiles the final materials for sale.

41. Defendant operates heavy equipment, including trucks and a conveyor belt, associated with the production and management of its industrial materials.

42. The industrial activities at the Facility fall under Standard Industrial Classification ("SIC") Code 2875 ("Fertilizers, Mixing Only").

43. The Facility collects storm water associated with industrial activity at the Facility into a system of storm water conveyances, including drop inlets, culverts, ditches, ponds, and channels.

44. The Facility discharges storm water collected in the storm water conveyance system described above from at least three discharge locations.

45. One discharge location, identified as "SL-1" by Defendant, is located after a detention pond beyond the western edge of the Facility where storm water runoff discharges into a drainage ditch that flows into the tributary to Icaria Creek.

46. One discharge location, identified as "SL-2" by Defendant, is located in the northeastern corner of the Facility where the storm water runoff is discharged off-site from the drainage ditch that parallels the access road at the north end of the Facility entrance driveway, which drains to a drainage ditch that flows to the Russian River.

47. One discharge location, identified as "ML-1" by Defendant, is located where storm water runoff discharges from the southern half of the employee/customer parking area to the drainage ditch that parallels Asti Road, and which drains to the tributary to Icaria Creek.

48. Icaria Creek is a tributary to the Russian River.

49. Icaria Creek, the Russian River and the Pacific Ocean are waters of the United States within the meaning of the Clean Water Act.  40 C.F.R. § 120.2(3).

   **b. The Regional Board's Efforts to Bring Defendant's into Compliance.**

50. Defendant registered the Facility for General Permit compliance under Order No. 97-03-DWQ.

51. On or about October 30, 2015, and again on or about December 11, 2015, the Regional Board informed Defendant by letter that Defendant was required to renew its General Permit coverage for the Facility under the 2015 General Permit.

52. Defendant submitted a NOI application (No. 474937) to obtain coverage under the General Permit for the Facility on or about July 6, 2016.

53. The Regional Board returned the application, stating that it was incomplete and included instructions for how to complete it.

54. On or about September 17, 2020, the North Coast Regional Water Quality Control Board ("Regional Board") issued Defendant a "Notice of Non-Compliance with the General Permit for Storm Water Discharges Associated with Industrial Activities, Order Number 2014-0057-DWQ, NPDES Permit Number CAS000001" ("1st NNC"), a true and correct copy of which is included as Attachment A to **Exhibit A**.

55. The 1st NNC explained that the Act prohibits certain discharges of storm water containing pollutants except where such discharges occur in compliance with a NPDES permit.

56. The 1st NNC letter informed Defendant that its Facility requires permit coverage under the California Industrial General Permit, Order No. 2014-0057-DWQ, NPDES Permit No. CAS000001.

57. On or about September 24, 2020, Paul DenBeste responded to the Regional Board with a letter, a true and correct copy of which is included as Attachment B to **Exhibit A**, stating

1  that pursuant to court order in case number 4:16-cv-03914-KAW, filed in the Northern District
2  of California, "all purported claims in your attached September 17, 2020 letter against Den Beste
3  Yard and Garden Inc., and or against Paul Den Beste, and or against Melody Den Beste, are the
4  court ordered responsibility of, and therefore must be directed to, Patrick Bulmer, California
5  Receivership Services, P.O. Box 5128, Oroville, CA 95966."

6  58. However, no such order exists, and case number 4:16-cv-03914-KAW was
7  dismissed without prejudice, and the Facility remained out of compliance with the Act because
8  the Facility was not covered any NPDES permit.

9  59. The Regional Board subsequently informed Defendant, by email to Paul
10 DenBeste dated October 1, 2020, a true and correct copy of which is included as Attachment C
11 to **Exhibit A**, that the Secretary of State indicates that Paul and Melody DenBeste are the
12 responsible corporate owners and/or officers of the Facility.

13 60. On or about October 28, 2020, the Regional Board issued a second notice of non-
14 compliance ("2nd NNC"), a true and correct copy of which is included as Attachment D to
15 **Exhibit A**.

16 61. The 2nd NNC reiterates Defendant's obligation to obtain permit coverage under
17 the General Permit, and provides Defendant with notice of its noncompliance with the Act.

18     **c. Defendant's Failure to Register for NOI General Permit Coverage.**

19 65. Defendant's NOI coverage under the General Permit (Order No. 97-03-DWQ)
20 was administratively terminated on or about February 25, 2016.

21 66. Defendant has been operating its Facility without any General Permit coverage
22 continuously since February 25, 2016.

23 67. During significant rain events Defendant continues to discharge storm water
24 associated with industrial activities from the Facility.

25 68. Defendant has not certified and submitted to SMARTS a completed NOI and
26 signed certification statement.

27 69. Defendant has not certified and submitted to SMARTS a copy of a current site
28 map from the SWPPP.

70. Defendant has not certified and submitted to SMARTS a SWPPP.

71. Defendant has not paid the appropriate annual fee in accordance to General Permit Section II.B.2.c and 23 C.C.R. § 2200 *et seq*.

72. The State Water Board has not assigned Defendant a WDID for the Facility.

## VI. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

**Discharge of Pollutants from the Facility in Violation of the Act**
**(Violations of 33 U.S.C. §§ 1311(a), 1342)**

115. Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

116. Plaintiff is informed and believes, and thereupon alleges, that on numerous occasions between at least March 28, 2017 and the date of the filing of this Complaint, Defendant violated section 301(a) of the CWA, 33 U.S.C. § 1311(a), by discharging storm water associated with industrial activities generated at its Facility into the Russian River without a NPDES permit issued pursuant to 33 U.S.C. § 1342.

117. Each and every day Defendant discharges, and continues to discharge, pollutants to waters of the United States from the Facility without a NPDES permit issued pursuant to 33 U.S.C. § 1342 is a separate and distinct violation of Section 301(a) of the Act.  33 U.S.C. § 1311(a).

118. Defendant is subject to civil penalties for each and every violation of the Act since March 28, 2017.  *See* 33 U.S.C. §§ 1319(d), 1365; 40 C.F.R. § 19.4.

119. Theses violations are ongoing and continuous so long as Defendant operates its Facility without a permit as required by 33 U.S.C. §§ 1311, 1342.

120. Continuing commission of the acts and omissions alleged herein irreparable harms the waters of the United States, Plaintiff, and its members, for which harm Plaintiff has no plain speedy or adequate remedy at law.

## VII. RELIEF REQUESTED

Wherefore, CSPA respectfully requests that this Court grant the following relief:

      a.     Declare Defendant to have violated and to be in violation of CWA section 301(a), 33 U.S.C. § 1311(a), for discharging pollutants from the Facility not in compliance with a permit issued pursuant to CWA Section 402, 33 U.S.C. § 1342;

      b.     Enjoin Defendant from discharging pollutants from the Facility and to the surface waters surrounding and downstream from the Facility in violation of the General Permit and the Clean Water Act;

      c.     Enjoin Defendant from further violating the substantive and procedural requirements of the General Permit and the Clean Water Act;

      d.     Order Defendant to pay civil penalties of $59,973 per day per violation for all violations occurring after November 2, 2015, pursuant to Sections 309(d) and 505(a) of the Clean Water Act, 33 U.S.C. §§ 1319(d), 1365(a), and 40 C.F.R. §§ 19.1–19.4;

      e.     Order Defendant to take appropriate actions to restore the quality of navigable waters impaired by its activities;

      f.     Award Plaintiff's costs and fees (including reasonable attorney, witness, and consultant fees) as authorized by the Act, 33 U.S.C. § 1365(d); and,

      g.     Award any such other and further relief as this Court may deem appropriate.

Dated: August 10, 2022                  Respectfully Submitted,

                                        LAW OFFICES OF ANDREW L. PACKARD

                                        By: /s/ William N. Carlon

                                        William N. Carlon
                                        Attorney for Plaintiff
                                        CALIFORNIA SPORTFISHING
                                        PROTECTION ALLIANCE